1  Jennifer Sarnelli (State Bar No. 242510)
   James S. Notis
2  **GARDY & NOTIS, LLP**
   501 Fifth Avenue, Suite 1408
3  New York, NY 10017
   Tel: 212-905-0509
4  Fax: 212-905-0508

5  Counsel for Plaintiff

**Filed**

OCT 1 2 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Fee paid
SI
(15)

e-filing

7

8  **UNITED STATES DISTIRCT COURT
   NORTHERN DISTRICT OF CALIFORNIA**

9

10  TIMOTHY COYNE, on behalf of himself and
    all others similarly situated,

11                          Plaintiff,

12        v.

13  OCZ TECHNOLOGY GROUP, INC., RYAN
14  M. PETERSEN, and ARTHUR F. KNAPP, JR.

15                          Defendants.

No. 12 - 05288

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

HRP BY FAX

16

17        Plaintiff Timothy Coyne ("Plaintiff"), individually and on behalf of all other persons and

18  entities who purchased or otherwise acquired common stock issued by OCZ Technology Group,

19  Inc. ("OCZ" or the "Company") between July 10, 2012 and October 10, 2012 inclusive (the "Class

20  Period"), by his undersigned attorneys, for his Class Action Complaint ("Complaint"), alleges the

21  following upon personal knowledge as to himself and his own acts, and upon information and

22  belief as to all other matters. Plaintiff's information and belief is based on his investigation

23  (made by and through his attorneys), which investigation included, among other things, a review

24  and analysis of: (i) public documents pertaining to the defendants; (ii) OCZ's filings with the

25  Securities and Exchange Commission ("SEC"); (iii) press releases published by OCZ; (iv)

26  analyst reports concerning the Company; and (v) newspaper and magazine articles (and other

27  media coverage) regarding OCZ and its business. Many of the facts supporting the allegations

28  contained herein are known only to the defendants or are exclusively within their custody and/or

---

1

CLASS ACTION COMPLAINT

control.  Plaintiff believes that further substantial evidentiary support will exist for the allegations in this Complaint after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is securities class action brought on behalf of all purchasers of OCZ's publicly traded securities during the Class Period, which securities were artificially inflated as a result of violations of the federal securities laws arising out of defendants' (i) dissemination of false and misleading statements concerning the Company's financial results; and (ii) intentional and/or reckless disregard of basic accounting principles.

## JURISDICTION AND VENUE

2.      This action arises under Sections 10(b), and 20(a) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

3.      This Court has subject-matter jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391.  Many of the acts and practices complained of herein occurred in substantial part in this District.  OCZ maintains its headquarters in this District at 6373 San Ignacio Avenue, San Jose, California 92612.

5.      In connection with the acts, transactions and conduct alleged herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange and market.

## THE PARTIES

6.      Plaintiff Timothy Coyne purchased the publicly traded securities of OCZ at artificially inflated prices during the Class Period as set forth in the accompanying certification (incorporated by reference herein).

7.      Defendant OCZ is a Delaware corporation that designs, manufactures, and distributes solid state drives (SSDs) and computer components.  OCZ is headquartered at 6373

2

CLASS ACTION COMPLAINT

San Ignacio Avenue, San Jose, California 92612.  OCZ is traded on the Nasdaq under the symbol "OCZ".

8.      Defendant Ryan M. Petersen ("Petersen") served as the Company's Chief Executive Officer ("CEO") and a member of the Board from 2002, when he founded the Company, until September 17, 2012, when he resigned as CEO.  Petersen is the inventor or co-inventor of most of OCZ's proprietary technology.

9.      Defendant Arthur F. Knapp, Jr ("Knapp") served as Chief Financial Officer ("CFO") of OCZ from December 2010 through the present.  Knapp announced his intention to retire from the Company on August 9, 2012, but has agreed to remain in his position until a replacement is hired.  Knapp previously served as OCZ's CFO from November 2005 to March 2009, Vice President of Finance from March 2009 to October 2010 and Interim CFO from October 2010 to December 2010.

10.      Defendants Petersen, and Knapp are collectively referred to herein as the "Individual Defendants."  The Individual Defendants and OCZ are collectively referred to herein as the "Defendants."

## CONTROL PERSON ALLEGATIONS/GROUP PLEADING

11.      By virtue of the Individual Defendants' positions within the Company, they had access to undisclosed adverse information about its business, operations, operational trends, finances, and present and future business prospects.  The Individual Defendants would ascertain such information through OCZ's internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, conversations and connections with vendors and customers, attendance at sales, management, and Board of Directors' meetings, including committees thereof, and through reports and other information provided to them in connection with their roles and duties as OCZ officers and directors.

12.      It is appropriate to treat the Individual Defendants collectively as a group for pleading purposes and to presume that the materially false, misleading and incomplete information conveyed in the Company's public filings and press releases as alleged herein was

3

CLASS ACTION COMPLAINT

the result of the collective actions of the Individual Defendants identified above. The Individual Defendants, by virtue of their high-level positions within the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, prospects, growth, finances, and financial condition, as alleged herein.

13.     The Individual Defendants were involved in drafting, producing, reviewing, approving and/or disseminating the materially false and misleading statements and information alleged herein, were aware of or recklessly disregarded the fact that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the Nasdaq, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information. The Individual Defendants' material misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.     The Individual Defendants, by virtue of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. The Individual Defendants were provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, they are responsible for the accuracy of the public reports and releases detailed herein.

4

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class (the "Class") of all persons who purchased or otherwise acquired OCZ common stock during the Class Period, and who were damaged thereby, excluding the Defendants herein, members of the immediate families of the Individual Defendants, any parent, subsidiary, affiliate, officer, or director of OCZ, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

17.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of members of the Class is unknown to Plaintiff at the present time and can only be ascertained from books and records maintained by OCZ and/or its agent(s), Plaintiff believes that there are tens of thousands of members of the Class located throughout the United States.  During the Class Period, OCZ had over 67 million issued and outstanding of common stock.  Throughout the Class Period, OCZ common stock was actively traded on the Nasdaq.

18.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained extremely competent counsel experienced in class and securities litigation and intends to prosecute this action vigorously.  Plaintiff is a member of the Class and does not have interests antagonistic to, or in conflict with, the other members of the Class.

19.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class purchased OCZ securities at artificially inflated prices and have sustained damages arising out of the same wrongful course of conduct.

20.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members.  Among the questions of law and fact common to the Class are:

a.      Whether the federal securities laws were violated by the Defendants' acts and omissions as alleged herein;

5

1        b.     Whether the Defendants participated in and pursued the common course of

2 conduct and fraudulent scheme complained of herein;

3        c.     Whether the Defendants had knowledge of (or were reckless with respect

4 to) the improper activities described herein;

5        d.     Whether the statements disseminated to the investing public, including

6 investors in OCZ, during the Class Period omitted and/or misrepresented material facts about

7 OCZ's true financial condition, business operations and future business prospects;

8        e.     Whether Defendants acted knowingly or recklessly in omitting to state

9 and/or misrepresenting material facts;

10        f.     Whether the market price of OCZ's securities during the Class Period was

11 artificially inflated due to the non-disclosures and/or misrepresentations complained of herein;

12 and

13        g.     Whether Plaintiff and the other members of the Class have sustained

14 damages and, if so, the appropriate measure thereof.

15      21.     A class action is superior to other available methods for the fair and efficient

16 adjudication of this controversy since, among other things, joinder of all members of the Class is

17 impracticable. Furthermore, as the damages suffered by many individual Class members may be

18 relatively small, the expense and burden of individual litigation make it virtually impossible for

19 Class members individually to seek redress for the wrongful conduct alleged. Plaintiff does not

20 foresee any difficulty in the management of this litigation that would preclude its maintenance as

21 a class action.

22      22.     The names and addresses of the record owners of the shares of OCZ common

23 stock and other securities purchased during the Class Period are available from OCZ and/or its

24 transfer agent(s). Notice can be provided to persons who purchased or otherwise acquired OCZ

25 common stock by a combination of published notice and first class mail, using techniques and

26 forms of notice similar to those customarily used in other class actions arising under the federal

27 securities laws.

28

6

CLASS ACTION COMPLAINT

## SUBSTANTIVE ALLEGATIONS

23. On July 10, 2012, OCZ filed a quarterly report on Form 10Q with the SEC providing shareholders with fiscal 2013 first quarter results (the "Form 10Q"). The Form 10Q stated that the Company had record revenues of nearly $114 million and that its Solid State Drive ("SSD") revenue had risen 54% over the previous year.

24. In connection with the Form 10Q, the Company issued a press release that same day that was also filed with the SEC. The press release provided shareholders with information about the expected second quarter results:

- OCZ expects net revenue for its second fiscal quarter ending August 31, 2012 (Q2'13), to be in the range of $130 to $140 million.

- OCZ expects net revenue for its fiscal year ending February 28, 2013 (FY'13) to be in the range of $630 to $700 million. This represents a growth rate of approximately 80% at the midpoint; we expect, based on historical trends, revenue to be weighted to the second half of the year, with approximately 60% to 65% of revenue to occur in the second half of the year

- Non-GAAP gross margins are expected to increase in Q213 and to exit the year in excess of 30%, with typical sequential gross margin increases of 100 to 250 basis points per quarter throughout the fiscal year, subject to changes in product mix as the SSD landscape continues to evolve.

- OCZ expects non-GAAP operating expenses for Q2'13, to be in the range of $38 to $41 million with expenses exiting the year at between $43 and $47 million per quarter, as OCZ continues to invest in its ongoing growth objectives

25. In connection with the Form 10Q, on July 10, 2012, OCZ held a conference call for its shareholders wherein it touted its new business opportunities and booked revenue for the second quarter. Company CEO Petersen told investors:

> Moving to guidance, we expect our net revenue in Q2 to be in the range of $130 million to $140 million, and $630 million to $700 million for the year. To add clarity here, as in years past, we expect 60% to 65% of our revenue will occur in the second half of the year.
>
> We expect sequential gross margins, I'm sorry, we expect sequential gross margin increases with typical increases in the 100 to 250 basis points per quarter range throughout the remainder of the fiscal year and to exit the year in excess of 30%. This is, of course, subject to any changes in product mix as the SSD landscape continues to evolve.
>
> We expect non-GAAP operating expenses to be in the range of $38 million to $41 million for Q2 and to exit the year between $43 million and $47 million as we

continue to aggressively invest in building out the business and strengthening our leadership position.

26.     Petersen explained that the $140 million second quarter revenue guidance was based on hard numbers telling investors:

> So the 140 is immediately shippable backlog. So we would have been at -- it's actually 139 point -- and change, it's close to 140, its slightly under.  So that would have been our expected shipping level had we not had the shortage.

27.     In fact, one analyst asked: "So it just seems a $130 million to $140 million is significantly conservative just in the very near-term or am I missing something?"  Petersen replied: "I really don't think you're missing anything," inferring that the guidance provided was conservative and could potentially be higher.

28.     Petersen also told investors that there were a number of large opportunities with Microsoft: "There are numerous opportunities at Microsoft.  I do believe that we're currently engaged in six sizable for us opportunities, probably four to five of which we expect to win in the short term, hopefully as a sole source.  And some of them we've won already."  When asked by an analyst if these opportunities were included in the "630 to 700 guidance," Petersen stated that they were not included in that guidance.  Thus, shareholders were led to believe that revenues could in fact exceed the guidance provided by OCZ for the second quarter.

29.     However, the Defendants failed to tell shareholders that these second quarter financial results were only obtainable through the consumer incentives that would substantially reduce the Company's financial results.  In fact "consumer incentives" was not mentioned at all during the conference call on July 10, 2012.

30.     Based on these statements, shareholders were led to believe that OCZ had grown substantially and that its revenues would continue to grow therefore making the stock an attractive investment opportunity.

31.     On August 9, 2012, Company CFO Knapp announced his intention to retire as soon as OCZ hired a replacement.  Knapp has been an executive since the beginning joining OCZ in 2005, just three years after the Company was founded.  Knapp's only explanation for the timing of

8

his retirement was: "After more than eight years at the Company, I have decided that it is the right time to retire."

32.     On September 5, 2012, OCZ issued a press release that was also filed with the SEC announcing the Company's preliminary fiscal 2013 second quarter results.  These results, while failing to reveal the entire truth regarding the second quarter financials, began to paint the picture that the Company's earlier representations regarding future results were baseless.  In the press release Defendants told investors:

> The Company expects preliminary revenue for the second fiscal quarter of 2013 to be approximately $110 to 120 million compared to the previously guided revenue range of $130 to $140 million.  This preliminary revenue range compares to $113.6 million for the first fiscal quarter of 2013 and $78.5 million for the second fiscal quarter of 2012.

> "Despite achieving bookings in excess of our expectations for our second fiscal quarter, we were not able to meet our previously stated revenue guidance due primarily to constraints in NAND flash supply," said Ryan Petersen, CEO of OCZ Technology.  "During the month of August we experienced a significant shortage on certain NAND flash components, based on industry wide tightening of supply, leaving OCZ with an undersupply of the 2xnm MLC NAND used in our Vertex and Agility Line of products."

> "While we believe that the situation will resolve itself, subject to market conditions, we plan to hasten our transition to new process nodes in order to help ease these supply constraints," added Petersen.

33.     While the Company disclosed that its revenue would fall short of the amounts it previously told investors it would conservatively achieve, the Company blamed NAND supply rather than admitting that they were proving customer incentives that were in excess of what was normal and customary.

34.     As a result of this partial disclosure the stocks fell over 25% to $4.35 the date after OCZ issued the September 5, 2012 press release.

35.     Shareholders however, did not know that the full truth had yet to be exposed to the market.

36.     On September 17, 2012, OCZ issued a press release announcing that Petersen had tendered his resignation and that Alex Mei, OCZ's Executive Vice President and Chief Marketing Officer would act as the Company's Interim CEO, effective immediately.  Petersen provided no explanation for his sudden departure from the Company he founded.  On October 9,

9

1   2012 the Company announced it had entered into a separation agreement with Petersen effective

2   October 2, 2012.

3         37.     On October 10, 2012, OCZ announced that the Board of Directors had appointed

4   Ralph Schmitt ("Schmitt"), who had been a director of the Company since April 2011, as CEO

5   effective immediately.

6         38.     Also, on October 10, 2012, OCZ issued a second press release informing

7   shareholders that its previously announced preliminary fiscal second quarter results were not

8   accurate and that it would not be timely filing its Form 10Q with the SEC. The October 10, 2012

9   press release stated only:

> OCZ Technology Group, Inc. (Nasdaq: OCZ) a leading provider of high-performance solid-state drives (SSDs) for computing devices and systems, today announced that it will file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission that allows the Company to extend the deadline to file its Form 10-Q for the second quarter of fiscal year 2013 (Q2'13), which ended on August 31, 2012. With this extension, if the Form 10-Q is filed by October 15, 2012, the Form 10-Q will be deemed to be timely filed.
>
> The Company's financial statements are still under review. The Q2'13 revenue will be materially lower than the September 5th preliminary revenue range of $110 to $120 million. This new revenue estimate and filing delay is principally due to the impact of customer incentive programs which were discovered subsequent to the preliminary announcement during the normal close process, and which the Company will be reporting as a material weakness in its Form 10-Q. The Company also expects to report negative gross margins and a significant net loss for Q2'13 and will hold a conference call today at 7:00am Pacific Time (10:00am Eastern Time).
>
> The financial information for Q2'13 presented in this press release is preliminary and remains subject to management's review of the results and also review by the Company's independent accounting firm. The Company will now host its Q2'13 earnings call in conjunction with the filing of its Form 10-Q and has postponed the previously scheduled conference call.

22        39.     Following this news, the price of OCZ shares plummeted that day more than

23  45%, and over 69% from the start of the Class Period, to as low as $1.80 per share – a two-year

24  low -- on heavy trading volume.

25        40.     Later that evening, OCZ held a conference call to explain the Company's

26  announcement that revenues would be materially lower than originally stated. Schmitt, in his

27  new role as CEO led the call, telling investors:

28

CLASS ACTION COMPLAINT

The September 5 updated revenue guidance cannot be relied upon. There will be material changes due to customer incentives that were in excess of what was normal and customary in the past. While the good news is our control procedures found the issue before reporting, it however was not sufficient enough to prevent this from happening.

There was such an emphasis in Q2 for management to grow market share at all cost, hence extraordinary incentives were undertaken. We need additional time to ensure that all the proper accounting treatment has been applied to this event. These incentives will also have a significant impact on our gross margins and will make our loss much larger than is expected. Of course you should assume that our cash position has also declined and we've accessed our credit facility. We will clearly discuss specific numbers once the earnings call is rescheduled. It is our goal to file our Q and have the call as expeditiously as possible.

41.    Schmitt also told investors that it previous statement blaming lowered revenue on NAND while true was more complicated than disclosed:

Yeah, so in regards to what was disclosed before in regards to NAND being an issue for the company, that is true. I state that it was a little more complicated than that. We have been single or sole sourced for a NAND supply. We also had some execution issues internally in regards to forecasting the amount of product that we needed, and hence as the supply got a little tighter, our suppliers just could not be as flexible as we needed them to be. We all know that the demand and supply ratios have basically come more in line. And so, again you have to be very good from our perspective on assuring that we're aligned with our suppliers in that area. And so, we've made some – again, some process changes to try to impact that moving forward, because we're as much to blame here from an execution perspective as our suppliers are.

42.    Defendants' Class Period public representations referenced above were each materially false and misleading when made as they misrepresented the following material adverse facts which were known to the Defendants or recklessly disregarded by them.

**INAPPLICABILITY OF SAFE HARBOR**

43.    As alleged herein, the Defendants acted with scienter in that they knew, at the time that they issued them, that the public documents and statements issued or disseminated in the name of OCZ were materially false and misleading or omitted material facts; knew that such statements or documents would be issued or disseminated to the investing public; knew that persons were likely to reasonably rely on those misrepresentations and omissions; and knowingly and substantially participated or were involved in the issuance or dissemination of such statements or documents as primary violations of the federal securities law. As set forth elsewhere herein, the Defendants, by virtue of their (i) receipt of information reflecting the true facts regarding OCZ, (ii) control over, and/or receipt of OCZ's allegedly materially misleading

11

misstatements, and (iii) access to confidential proprietary information concerning OCZ were informed of, participated in and knew of the fraudulent scheme alleged herein. With respect to non-forward-looking statements and/or omissions, Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.

44.     Defendants' false and misleading statements and omissions do not constitute forward-looking statements protected by any statutory safe harbor. The statements alleged to be false and misleading herein all relate to facts and conditions existing at the time the statements were made. No statutory safe harbor applies to any of the Defendants' material false or misleading statements.

45.     Alternatively, to the extent that any statutory safe harbor is intended to apply to any forward-looking statement pled herein, the Defendants are liable for the false forward-looking statement pled because, at the time each forward-looking statement was made, the speaker knew or had actual knowledge that the forward-looking statement was materially false or misleading, and the forward-looking statement was authorized and/or approved by a director and/or executive officer of OCZ who knew that the forward-looking statement was false or misleading. None of the historic or present tense statements made by the Defendants was an assumption underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such an assumption underlying or relating to any projection or statement of future economic performance when made nor were any of the projections or forecasts made by the Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## ADDITIONAL SCIENTER ALLEGATIONS

46.     As alleged herein, the Defendants acted with scienter in that, *inter* alia, the Defendants knew or acted with recklessness with respect to the fact that the public documents and statements issued or disseminated in the name of OCZ were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of

12

1    such statements or documents as primary violations of the federal securities laws.  As set forth

2    elsewhere herein, the Individual Defendants, by virtue of their receipt of information reflecting

3    the true facts regarding OCZ, their control over and/or receipt and/or modification of the

4    allegedly materially misleading misstatements and omissions described herein, which made them

5    privy to confidential proprietary information concerning OCZ, directly and substantially

6    participated in the fraudulent scheme alleged herein.

7        47.     Moreover, the ongoing fraudulent scheme described in this Complaint could not

8    have been perpetrated over a substantial period of time, as has occurred, without the knowledge

9    of individuals at the highest levels of the Company, including the Individual Defendants.

10    **APPLICABILITY OF PRESUMPTION OF RELIANCE:**<br>**THE FRAUD-ON-THE- MARKET DOCTRINE**

11        48.     The market for OCZ common stock was open, well-developed and efficient at all

12    relevant times for the following reasons (among others):

13        a.     The Company's shares met the requirements for listing, and were listed

14    and actively traded on the Nasdaq;

15        b.     As a regulated issuer, OCZ filed periodic public reports with the SEC;

16        c.     OCZ regularly communicated with public investors via established market

17    communication mechanisms, including through regular disseminations of press releases on the

18    national circuits of major newswire services and through other wide-ranging public disclosures,

19    such as communications with the financial press and other similar reporting services;

20        d.     The market reacted to public information disseminated by OCZ;

21        e.     OCZ was followed by numerous material securities analysts employed by

22    major brokerage firms who wrote reports which were distributed to the sales force and certain

23    customers of their respective brokerage firms.  Each of these reports was publicly available and

24    entered the public marketplace;

25        f.     The material misrepresentations and omissions alleged herein would tend

26    to induce a reasonable investor to misjudge the value of OCZ securities; and

27

28

13

---

g.      Without knowledge of the misrepresented or omitted material facts, Plaintiff and the other members of the Class purchased or otherwise acquired OCZ securities between the time Defendants made the material misrepresentations and omissions and the time the fraudulent backdating was being disclosed, during which time the price of OCZ securities was inflated by Defendants' misrepresentations and omissions.

49.     As a result of the foregoing, the market for OCZ's securities promptly digested current information regarding OCZ from all publicly available sources and reflected such information in OCZ common stock prices.  Under these circumstances, all purchasers and acquirers of OCZ's securities during the Class Period suffered similar injury through their purchase or acquisition of OCZ's securities at artificially inflated prices and a presumption of reliance applies.

## LOSS CAUSATION

50.     Throughout the Class Period, the prices of the Company's securities were artificially inflated as a direct result of Defendants' fraudulent misrepresentations regarding the Company's financial condition and results.

51.     The Company's financial condition and results were material information to Plaintiff and the other members of the Class.  Had the truth been disclosed to the market at or before the end of the Class Period, Plaintiff and the other Class members would not have purchased OCZ stock at all, or would have done so only at substantially lower prices than the artificially inflated prices which they actually paid.

52.     When the truth about the Company was revealed, the inflation that had been caused by Defendants' misrepresentations and omissions was swiftly eliminated from the price of the Company's securities, causing significant losses to Plaintiff and the other Class members.

53.     The decline in the Company's securities price following the revelations of the Company's fraudulent practices, and the resulting losses suffered by Plaintiff and the other members of the Class, are directly attributable to the market's reaction to the disclosure of information that had previously been misrepresented or concealed by Defendants, and to the

14

1   market's adjustment of the Company's securities price to reflect the newly emerging truth about

2   the Company's financial condition.

3       54.     Defendants' fraudulent conduct, as alleged herein, proximately caused foreseeable

4   losses to Plaintiff and the other members of the Class.

5                           **CAUSES OF ACTION**
                                   **COUNT I**
6              **Violation of Section 10(b) of The Exchange Act**
                **And Rule 10b-5 Promulgated Thereunder**
7                       **(Against all Defendants)**

8       55.     Plaintiff repeats and realleges each and every allegation contained above as if

9   fully set forth herein.

10      56.     This Count is asserted by Plaintiff on behalf of itself and the Class against all the

11  Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule

12  10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder.

13      57.     During the Class Period, the Defendants carried out a plan, scheme and course of

14  conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

15  public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and

16  maintain the market price of OCZ's securities; and (iii) cause Plaintiff and other members of the

17  Class to purchase or otherwise acquire OCZ's securities at artificially inflated prices.  In

18  furtherance of this unlawful scheme, plan and course of conduct, the Defendants, and each of

19  them, took the actions set forth herein.

20      58.     The Defendants: (i) employed devices, schemes, and artifices to defraud; (ii)

21  made untrue statements of material fact and/or omitted to state material facts necessary to make

22  the statements not misleading by use of means or instrumentalities of interstate commerce; and

23  (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit

24  upon the purchasers and acquirers of the Company's securities in an effort to maintain artificially

25  high market prices for OCZ's securities in violation of Section 10(b) of the Exchange Act and

26  Rule 10b-5.

27      59.     As a result of their making and/or their substantial participation in the creation of

28  affirmative statements and reports to the investing public, the Defendants had a duty to promptly

CLASS ACTION COMPLAINT

disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-K (17 C.F.R. §229.10, *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information. The Defendants' material misrepresentations and omissions as set forth herein violated that duty.

60.    The Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class. The Defendants knowingly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

61.    As a result of the Defendants' fraudulent activity, the market price of OCZ was artificially inflated during the Class Period.

62.    In ignorance of the true financial condition of OCZ, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of OCZ containing the misleading information, purchased or otherwise acquired OCZ securities at artificially inflated prices during the Class Period.

63.    The market price of OCZ's securities declined materially upon the public disclosure of the true facts which had been misrepresented or concealed as alleged herein.

64.    Plaintiff's (and the Class') losses were proximately caused by Defendants' active and primary participation in OCZ's scheme to defraud the investing public by, among other things, falsifying the Company's finances and operations. Plaintiff (and the members of the Class) purchased OCZ securities in reliance on the integrity of the market price of those securities, and Defendants manipulated the price of OCZ securities through their misconduct as described herein. Furthermore, Defendants' misconduct proximately caused Plaintiff's (and the Class') losses. Plaintiff's (and the Class') losses were a direct and foreseeable consequence of Defendants' failure to disclose and their concealment of, *inter alia*, the true state of the business operations and financial condition of OCZ.

16

65.    Throughout the Class Period, Defendants were aware of material non-public information concerning OCZ's fraudulent conduct (including the false and misleading accounting statements).  Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information regarding OCZ's falsified revenue figures, and Plaintiff's (and the Class') losses were the foreseeable consequence of Defendants' concealment of this information.

66.    As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of OCZ securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

67.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.    As alleged herein, the Individual Defendants acted as controlling persons of OCZ within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a).  By virtue of their executive positions, and/or Board membership, as alleged above, these individuals had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's internal reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.    In particular, the Individual Defendants had direct involvement in the day-to-day operations of the Company and therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

17

CLASS ACTION COMPLAINT

70.     As set forth above, the Individual Defendants and OCZ committed a primary violation of Section 10(b) and Rule 10b-5 of the Exchange Act by the acts and omissions alleged in this Complaint.  By virtue of their positions as controlling persons of IMH, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchase or acquisition of OCZ securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action;

B.     Awarding compensatory damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated: October 12, 2012

**GARDY & NOTIS, LLP**

By:  */s/ Jennifer Sarnelli*
Jennifer Sarnelli

James S. Notis
501 Fifth Avenue, Suite 1408
New York, NY 10017
Tel: 212-905-0509
Fax: 212-905-0508
jsarnelli@gardylaw.com
jnotis@gardylaw.com

*Attorneys for Plaintiffs*

18

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Timothy Coyne, certify that:

1.      I have reviewed the complaint against OCZ Technology Group, Inc. and authorize the firm set forth on the complaint to move on my behalf for appointment as lead plaintiff.

2.      The security that is the subject of this action (OCZ Technology Group, Inc. (NASDAQ: OCZ)) was not purchased at the direction of plaintiff's counsel, or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and I will testify at deposition and trial, if necessary.

4.      My transactions in the security that is the subject of this litigation during the class period set forth in the complaint are as follows:

**Purchases:**

| Date | Shares Bought | Price Per Share |
|------|---------------|-----------------|
| 8/3/12 | 200 | $5.74 |

**Sales (if any):**

| Date | Shares Sold | Price Per Share |
|------|-------------|-----------------|
| | None | |

5.      I have not served as or sought to serve as a representative party on behalf of a class under this title during the last three years.

6.      I will not accept any payment for serving as a representative party, except to receive its pro rata share of any recovery or as ordered or approved by the court including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Signed: _Timothy E Coyne_

Timothy Coyne

JS 44 CAND   (Rev. 12/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TIMOTHY COYNE,

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jennifer Sarnelli, Gardy & Notis LLP, 501 Fifth Avenue, Suite 1408, New York, New York 10017

## DEFENDANTS
OCZ TECHNOLOGY GROUP, INC., RYAN M. PETERSEN, and ARTHUR F. KNAPP, JR

County of Residence of First Listed Defendant   Santa Clara County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

CV 12 -- 05288

## II. BASIS OF JURISDICTION   *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

"BY FAX" HRL

## IV. NATURE OF SUIT   *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN   *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from another district *(specify)*
☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 U.S.C. §§78j(b) and 78t(a), 17 C.F.R. §240.10b-5.
Brief description of cause:
Securities Fraud Class Action

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
(Place an "X" in One Box Only)
☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE   ☐ EUREKA

DATE
10/12/12

SIGNATURE OF ATTORNEY OF RECORD